AMERICAN PETROFINA COMPANY
OF TEXAS, Appellant,

v.

CRUMP BUSINESS FORMS, INC., and
Ed Crump, Appellees.

No. 20167.

Court of Civil Appeals of Texas,
Dallas.

March 7, 1980.

Rehearing Denied April 9, 1980.

George C. Chapman, Betty H. Little, Dallas, for appellant.

Mike McKool, McKool & Vassallo, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERTSON and STOREY, JJ.

ROBERTSON, Justice.

In this conspiracy action for recovery of overcharges made for printing, plaintiff, American Petrofina Company of Texas, appeals from the action of the trial court in granting the motions for summary judgment of defendants, Crump Business Forms, Inc., and Ed Crump. The principal question raised on appeal is whether the defendants' motions for summary judgment were supported by proper summary judgment evidence sufficient to establish that defendants were entitled to judgment as a matter of law. We conclude that defendant Business Forms has failed to meet this burden as to the theories upon which plaintiff appealed, that defendant Ed Crump failed to establish that the statute of limitations had run on Petrofina's cause of action against him individually, and that the trial court erred in considering Crump's motion for summary judgment on the alter ego theory without allowing Petrofina to complete its discovery. Consequently, we reverse and remand.

Petrofina's primary allegation is based on the existence of a conspiracy. Its petition alleges that its employee, Roy Camp, was responsible for obtaining competitive bids and then issuing purchase orders for the printing of forms used by Petrofina in its business operations, that Camp failed to obtain such bids, but rather issued purchase orders to Business Forms at prices substantially above competitive bids, and that either Camp was the borrowed servant of Business Forms in performing these actions or Business Forms participated in a conspiracy with Camp to breach Camp's fiduciary duty to his employer, Petrofina, and to misrepresent that the purchase orders were let at competitive prices. Petrofina also alleges that this participation was done maliciously, thus entitling it to exemplary damages. It avers further that Business Forms was the alter ego of Crump, who exercised complete and independent control over Business Forms, and therefore, that Crump should be individually liable for the damages. Because of the actions of Camp, Petrofina alleges that it was unaware of many material facts regarding these transactions.

The motion for summary judgment of Business Forms asserts that by accepting and paying for the completed printed material Petrofina agreed to the price charged, and thus, cannot now complain that the prices were unfair because they were not the lowest prices available; that no malicious and intentional acts were performed on the part of Business Forms which would support exemplary damages; that Crump never paid anything to Camp; that the only nonbusiness transactions they ever had were Crump buying lunch for Camp on one occasion and giving Camp a two-dollar parking ticket for a football game; and that Camp was never under the control of Business Forms, nor was he ever its borrowed servant. Business Forms' motion for summary judgment is sworn to by Crump, and refers to affidavits of Camp and Business Forms' estimator, Doris Ivey, and exhibits of purchase orders, purchase requisitions, invoices, payment vouchers, and checks in relation to each transaction between the parties. On the basis of these sworn assertions, the affidavits, and exhibits, Business Forms sought summary judgment that Petrofina had established no con-

spiracy to inflate prices between Business Forms and Camp. The trial court granted Business Forms' motion for partial summary judgment.

Subsequently, Crump filed his motion for summary judgment, supported by affidavits by Camp, Ivey, and himself. As bases for summary judgment, he asserted that he was never involved in the bidding procedure between the parties to this suit; that all correspondence between the parties was addressed to Business Forms; that all checks from Petrofina for printing were made payable to Business Forms and were deposited in Business Forms' bank account; that Crump did not exercise independent and complete control over Business Forms; and that because the last transaction involved in this suit occurred in August 1975 and suit against Crump was not filed until April 1979, the two year statute of limitations had expired. This motion was also granted, and final judgment was rendered that Petrofina take nothing from either defendant.

It appears from the summary judgment evidence that the intended procedure for the purchase of printing was that Petrofina's employee in charge of purchasing printed matter, Roy Camp, would receive through the inventory control system a notice that the supply of a particular form was running low. He would then contact various printing firms to obtain oral bids, award the order to the lowest competitive bidder, and forward a purchase order to that printer. The competitive bids of other printers would be noted on the order forms for review by the authorizing department. Upon receipt of a telephone request from Camp, Doris Ivey would calculate a bid, advise Camp of the bid, and, if the order was awarded to Business Forms, record the purchase order number Camp would give her over the telephone. Business Forms would then proceed with the printing and, upon completion, deliver the forms and send their invoice to Petrofina.

Camp stated in his affidavit that all purchase transactions with Business Forms were made subject to agreed prices and that this was necessary so that Petrofina would know what price they would have to pay and Business Forms could be sure they would receive their price for the work performed. He stated further that Business Forms was consistently reliable in quality, in promptness of delivery, and in maintaining sufficient quantities of the required paper to print any order. Camp stated that he "would get . . . competitive bids to test the market occasionally," and that he selected bids from his "knowledge of good quality and service, good delivery and good price . . . ." Every purchase order was approved by one of three supervisory personnel at Petrofina, and Camp stated that he was never told that he was paying too much for printing. He then proceeded to detail his activities in relation to each of the 137 forms purchased from Business Forms. Additionally, Camp stated that he had never seen Crump or Ivey socially, and that he had never received any gifts or loans from either of them, except that Crump had taken him to lunch on one occasion and had given him two parking tickets for Texas Stadium on another occasion.

In her affidavit, Doris Ivey stated that she was the estimator for printing work to be performed by Business Forms. She stated that she had never seen Camp other than when he was at Business Forms' office and had never done any favors for him, that she never conspired to inflate prices, but rather submitted bids to Petrofina without any knowledge of who else they asked for bids or of what their internal procedures were in regard to purchases of printing work. Ivey's bids for Business Forms were based on her knowledge of the costs which would be incurred in completing the printing work, including, on frequent occasions, the increased costs involved in complying with special requirements made by Petrofina. These requirements included rush orders, which required that Business Forms' employees work overtime and that large quantities of paper be stockpiled, and special detailing necessary on forms to be used in computers. Before any work was commenced, however, Ivey had to have an agreement from the customer as to the

price that she quoted. Thus, all work performed was on the basis of an agreed price. Ivey then proceeded to detail her activities in relation to each of the 137 forms purchased by Petrofina from Business Forms. Additionally, Ivey stated that Camp had never been paid any compensation by Business Forms, had never been employed by Business Forms, and had never been under the direction or control of Business Forms.

Crump's statement reiterated the procedure followed by Business Forms in giving bids and accepting orders at agreed prices. He also stated that he made none of the bids in question for Business Forms, that he was not the alter ego of Business Forms, that he did not exercise any independent or complete control over Business Forms, that he did not operate Business Forms as his own business, and that all of the transactions that are the subject of this lawsuit were with Business Forms—not Crump individually.

Petrofina contends here that the statements of Crump, Ivey, and Camp were inadequate to support the summary judgments because those statements were from interested parties and were not clear, consistent, and uncontroverted as required by rule 166–A(c) of the Texas Rules of Civil Procedure. Moreover, Petrofina contends that material issues of fact existed and thus, summary judgment was improper.

■ We must first determine what standard of review applies to this case. When a defendant moves for summary judgment, he accepts the burden of establishing that no genuine issues exist as to any material facts, and that he is entitled to judgment as a matter of law as to any of plaintiff's theories of recovery for which he seeks summary judgment. *Gaddis v. Smith*, 417 S.W.2d 577, 582 (Tex.1967); Tex.R.Civ.P. 166–A(c); Hittner, *Summary Judgments in Texas*, 43 Tex.B.J. 11, 16 (1980); *see Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 829 (Tex.1970). In order to do this, a movant-defendant must conclusively show that a fact required to establish at least one element necessary to the nonmovant-plaintiff's cause of action does not exist. There-

fore, when a plaintiff asserts alternative or multiple causes of action, and the defendant desires summary judgment as to the entire case, the defendant must conclusively show that facts do not exist as to at least one element of each of plaintiff's asserted causes of action. Until the movant-defendant has made such a showing, a nonmovant-plaintiff need not introduce any evidence. Once the movant-defendant has made a conclusive showing, however, the burden shifts to the nonmovant-plaintiff to introduce evidence sufficient to indicate that an issue still exists as to the facts the movant-defendant has sought to negate. On appeal, our task is first to examine each theory of recovery as to which summary judgment was granted and to determine whether the movant-defendant has conclusively shown the absence of facts which the plaintiff would have to prove to establish that ground.

The issues to which Petrofina would have been required to obtain affirmative answers in this case are: (1) Did Camp and Business Forms agree to perform an act or pursue a course of events which would injure Petrofina? (2) Did Camp or Business Forms act in furtherance of this agreement? (3) Was Petrofina injured? (4) Was this injury proximately caused by the act performed or course of events pursued? *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856–57 (Tex. 1968); *Southwest Bank & Trust Co. v. Bankers Commercial Life Insurance Co.*, 563 S.W.2d 329, 330 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). Therefore, the defendants must have established, by the evidence supporting their motions for summary judgment, that as a matter of law at least one of these issues must be answered in the negative. Hittner, *supra*, at 16.

■ The first element in Petrofina's case is an agreement. In most conspiracy cases, no direct evidence of an agreement is available; rather, circumstantial evidence and logical inferences therefrom are relied upon to establish this element. *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567, 581–82 (Tex.1963); *see*

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d at 857. Admittedly, this is a difficult element for a plaintiff to prove, but it is even more difficult for a defendant to negate as a matter of law. Business Forms and Crump contend that Petrofina has introduced no evidence to counter the statements in the affidavits supporting their motions that no agreement existed. This contention misconstrues the burden for obtaining a summary judgment. The nonmovant has no obligation to offer controverting evidence until the movant has established that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). We conclude that Business Forms has not established the absence of any agreement as a matter of law. The statements in this regard by Crump, Camp, and Ivey are the statements of interested witnesses because each member of an alleged conspiracy has a strong motive to deny it. For such statements to support a summary judgment, they must be readily controvertible. Tex.R. Civ.P. 166–A(c). Statements that the witnesses did not agree or conspire are not readily controvertible statements, and thus, do not satisfy the requirements of rule 166–A. No evidence tending to disprove an agreement, other than these statements, exists in the record; consequently, Business Forms has not negated, as a matter of law, the first element of Petrofina's case.

Whether the alleged conspirators acted in furtherance of an agreement is likewise difficult to controvert in the context of this case. Certain prices were charged by Business Forms that are alleged to be inflated. Many of the factors that go into calculating these prices are subjective, and because Business Forms failed to produce any records as to the component prices for each printing order, statements that the prices charged were not inflated over Business Forms' actual costs are not readily controverted. Again, the only evidence cited to this court that tends to negate this element of Petrofina's case does not meet the requirements of rule 166–A, and therefore, will not support a summary judgment.

The third element of Petrofina's case, which Business Forms has to negate, is the existence of an injury to Petrofina. Business Forms contends that all the transactions involved here were based on prices to which Petrofina agreed through its authorized employee, Camp. This contention fails because it requires a showing that Camp was acting within the scope of his employment. He would not be acting within the scope of his employment for Petrofina if he were acting pursuant to an agreement between Business Forms and Camp to injure Petrofina. Consequently, until the absence of such an agreement can be established, Camp cannot be said to have acted within the scope of his employment as a matter of law.

■ To negate proximate cause, the fourth element of Petrofina's case, Business Forms would have had to establish that any injury to Petrofina was not a result of the alleged conspiracy. We find no evidence relating to this element. Accordingly, we conclude that Business Forms has not satisfied the requirements for granting of its motion for summary judgment.

Petrofina also challenges the trial court's entry of summary judgment as to Crump, individually. Petrofina sought to hold Crump liable by alleging that Business Forms was his alter ego, that he exercised complete and independent control over Business Forms, and that on some occasions he operated the printing business as a corporation and on other occasions as his own business. In his motion for summary judgment, Crump contended that no material and substantial facts were in issue as to Business Forms being his alter ego, and that the statute of limitations had run before Crump was joined in this action. Since the trial court granted Crump's motion without indicating the grounds upon which the grant was made, we must address both grounds raised in the motion.

Regarding limitations, Crump contended that since the last purchase by Petrofina occurred in August 1975 and he was not joined in the suit until 1979, the two year

period of limitations had run. Tex.Rev.Civ. Stat.Ann. art. 5526 (Vernon Supp.1980). Petrofina countered that material issues of fact existed as to when Petrofina's cause of action accrued against Crump, initiating the running of the statute of limitations.

Petrofina's argument relies on the rule that in cases of fraud, the statute of limitations does not commence to run until the fraud is discovered or by the exercise of reasonable diligence should have been discovered. *E. g., Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex. 1979); *Wise v. Anderson,* 163 Tex. 608, 611, 359 S.W.2d 876, 879 (1962); *Whatley v. National Bank of Commerce,* 555 S.W.2d 500, 505 (Tex.Civ.App.—Dallas 1977, no writ). Petrofina contended that applying this rule, limitations commenced to run on December 6, 1978, the date Petrofina deposed Crump and acquired knowledge concerning his relationship with Business Forms, which indicated to Petrofina that Business Forms was Crump's alter ego, and therefore, that Crump was individually involved in the conspiratorial pricing.

 We cannot agree with the contention of either party. The theory of alter ego is based on the assumption that when a party is *identical* with a corporation, the former should stand liable for the acts of the latter. Thus, in *Gentry v. Credit Plan Corp.,* 528 S.W.2d 571 (Tex.1975), the supreme court stated that "[t]he purpose of the court in cases of this nature is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice, and that purpose should not be thwarted by adherence to any particular theory of liability." *Id.* at 575. In *Gentry,* as in the present case, the "owner" of the alleged alter ego was not joined in the suit against the alter ego until more than two years had elapsed from the date the cause of action arose. Nonetheless, the court held that a suit filed against Credit Plan (the alleged alter ego corporation) shortly after the cause of action arose, tolled the running of limitations against Colonial Finance Corporation (the "owner" of Credit Plan), because Credit Plan was alleged and proved to be the alter ego of Colonial. *Id.* at 575. Accordingly, in this case, bringing of suit against Business Forms tolled limitations as to Crump, if Petrofina can prove that Business Forms was Crump's alter ego.

Regarding Crump's contention that no material fact question existed as to alter ego, we conclude that if the summary judgment was based thereon it was improper, because the trial court abused its discretion by overruling Petrofina's motion for production of documents. Crump's deposition was taken in December 1978. On March 15, 1979, Petrofina requested in a letter that certain documents be produced which Crump had indicated in his deposition he could produce. Crump filed his motion for summary judgment on April 3, 1979, and Petrofina's response in opposition was filed April 19, 1979. In its response, Petrofina reiterated its request for certain documents and indicated that until they were produced and sufficient time allowed to review them, it opposed any hearing relating to the alter ego theory. Crump replied on April 25, 1979, enclosing his affidavit and copies of various leases and some of the records that Petrofina had requested. Crump also indicated that the corporate tax returns requested by Petrofina were privileged, but that they would be made available to the judge in order that he might determine if they were material. *See Narro Warehouse, Inc. v. Kelly,* 530 S.W.2d 146, 150 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n. r. e.). On May 4, 1979, Petrofina filed a motion requesting production of certain documents, including the documents mentioned above, as well as accounting, payroll, and other miscellaneous records. At the same time, Petrofina filed its motion for continuance until these records were produced and could be reviewed. Tex.R.Civ.P. 166–A(f). The trial judge overruled these two motions and entered summary judgment for Crump.

 On the state of this record, we conclude that the trial judge abused his discretion in denying Petrofina's motions. The question regarding whether to grant a motion to produce documents is whether, assuming the documents are produced, they

will constitute, contain, or lead to the discovery of evidence material to a matter involved in the action. Tex.R.Civ.P. 167(1). These requested documents could reasonably be expected to have contained or led to the discovery of evidence on the alter ego theory sufficient to raise genuine issues on material facts. The documents have repeatedly been requested by Petrofina and defendant had failed to produce them. While some of the requested documents were produced shortly before the motion to produce was filed, several other requested financial and accounting records were not produced. Although Petrofina's motions for production of documents and continuance were not filed until the date of the summary judgment hearing, the record reflects that Petrofina had diligently attempted to obtain these documents through letters and telephone calls, that it had been led to believe they would be produced, and that these records were material because only through accounting and financial records could Petrofina establish its theory of alter ego.

Crump argues that an abuse of discretion could not have occurred because the trial court had previously granted a partial summary judgment to Business Forms and thus, whether the corporation was Crump's alter ego was no longer an issue. This fact situation is not before us, however, since we have reversed the summary judgment as to Business Forms. The trial court's subsequent action of granting summary judgment to Crump cannot be justified by its previously erroneous action of granting summary judgment to Business Forms. If the subsequent action is truly dependent upon the first summary judgment, as Crump contends, then it must necessarily fall upon our reversal of the first summary judgment. Consequently, we cannot agree with Crump's contention.

Therefore, we reverse the trial court's action in granting these summary judgments and remand this case to the trial court.