**ATLANTIC RICHFIELD COMPANY,**
Appellant,

v.

**EXXON CORPORATION, et**
**al., Appellee.**

**No. A14–82–477CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 10, 1983.

Rehearing Denied Jan. 12, 1984.

**860**

Stephen R. Kirklin, Kirklin, Boudreaux & Joseph, Houston, for appellant.

Jack Vickery, Houston, for appellee.

Before MURPHY, DRAUGHN and ELLIS, JJ.

MURPHY, Justice.

This appeal from a severed partial summary judgment granted in favor of appellees, Exxon Corporation, Marathon Oil Company, Mobil Producing Texas and New Mexico, Inc. Sun Gas Company, Tenneco Oil Company, Gulf Oil Corporation, Amoco Production and Paul E. Barnhart presents five questions: (1) whether the trial court's refusal to allow additional discovery on matters disposed of in a partial summary judgment was an abuse of discretion; (2) whether the appellant, Atlantic Richfield Company, properly presented its objections to the partial summary judgment under Rule 166–A(c) which provides that only "expressly presented" issues may be considered on appeal as grounds for reversal; (3) whether the trial court improperly granted a partial summary judgment in circumstances in which it should have instead required the appellees to contest the appellant's cause of action through special exceptions and thereafter allowed appellant opportunity to amend its pleadings; (4) whether the trial court contrary to Rule 166–A(c) rendered judgment on issues not presented by appellees in their motion for summary judgment; (5) whether the trial court incorrectly interpreted the agreements formed in 1949 to not have cross-conveyed gas reserves in place or some other real property interest; (6) whether the trial court incorrectly interpreted the termination provision in the 1949 agreements. We find the trial court to have acted free of error on every point except in its interpretation of the termination provisions of the 1949 agreements.

Prior to March 11, 1949 appellant in the form of its predecessor entity, Sinclair Prairie Company, and the appellees were owners of various oil and gas and mineral leases located in lands known as the Heyser Field of Calhoun and Victoria Counties, Texas. In 1948 the Texas Railroad Commission ordered the operators in the Heyser Field to cease flaring gas. Prior to the no-flare order, Exxon and Plymouth already owned and operated a casinghead gasoline plant in the Heyser Field. To comply with the Commission's order the appellant's predecessor, Sinclair, and appellees decided to purchase undivided interests in the plant and enlarge its capacity to avoid gas flaring. Formal assignments of the gasoline plant, land, and buildings were executed on March 11, 1949. On that date the appellant's predecessor, Sinclair, and appellees additionally agreed to jointly construct, own and operate gas-gathering facilities to produce gas-well-gas. The parties agreed to allocate ownership of the plant and the gas and gas liquids which were extracted in the plant in the same proportion as the ownership interest of each party under their respective leases in the original dissolved and associated gas reserves in place in the Heyser Field, regardless of the particular wells, leases, or sands from which the gas was produced.

The parties operated the plant and gas gathering facilities according to these agreements for over thirty years. During this period appellant contributed from its dissolved and associated gas reserves in place, gas production at a rate substantially in excess of its proportionate ownership of the total gas reserves in place in the Heyser Field. At a time when the appellant's reserves were significantly depleted and a larger share of production was being realized from reserves owned by the appellees, the appellees on October 1, 1980 voted to terminate the March 11, 1949 agreements and executed a new agreement which provides for compensation of each party on the basis of actual production as opposed to a fixed percentage. The result of the new agreement is a reduction in the appellant's interest in gas production and a correlative increase in the appellees' interest. The appellant was not a party to the new agreement.

Appellant in its Second Amended Original Petition, which is the petition which controls for purposes of this appeal, states three pleas for relief. In Count I appellant requested a declaration that through the terms of the March 11, 1949 agreements, the appellant has been vested with an indefeasible right to a fixed percentage of the original dissolved and associated and non-associated gas reserves contained in the Heyser Field and of plant products and residue gas from the plant. Appellant further requested a judgment declaring that appellees' attempt to terminate the 1949 agreements in no way operates to deprive appellant of its vested interest. Count II requests an accounting by appellees for all gas produced in the Heyser Field which have been delivered to the plant and proceeds obtained from the sale of the plant products and residue gas from the date of the appellees vote of termination of the 1949 agreements. Count III alleges that appellees are tenants in common with the appellant in the plant and gas well gas gathering facilities, that the appellant has been ousted from possession, and that appellees are withholding profits from the plant and facilities in trust for the benefit of the appellant. The appellant further requested the appellees be ordered to account for the appellant's share of the profits.

 The procedural history of this action which is pertinent to the appellant's points of error is listed below.

(1) On January 13, 1982 the appellant filed its first request for production of documents in which it requested the original and all amendments to the 1949 agreement entitled "CONTRACT FOR PURCHASE AND SALE OF UNDIVIDED INTEREST IN EXISTING CASINGHEAD GASOLINE PLANT IN HEYSER FIELD, CALHOUN AND VICTORIA COUNTIES, TEXAS AND FOR THE ENLARGEMENT AND OPERATIONS THEREOF".

(2) On February 15, 1982 appellees responded to the appellant's request by stating that the appellees were unaware of any amendments to the 1949 agreement and that no documents existed which embodies an amendment. In their response appellees requested pursuant to Rule 167(3) of the Texas Rules of Civil Procedure a hearing on their objections to appellant's requested production and a hearing on appellees' second motion for summary judgment, which was also filed on February 15, 1982.

(3) On March 15, 1982 the trial court heard oral argument on the appellees' second motion for summary judgment, at which time the court took the matter under advisement and requested briefs from the parties on the possibility of a partial summary judgment on Counts I and II of the appellant's petition. Neither the appellant nor the appellees requested the trial court to rule on the appellees' objections to appellant's request for production of documents at the March 15th hearing.

(4) On April 2, 1982 the trial judge made the following docket entry: "Apr 2 1982 M/Partial S.J. granted. W.E.J." and sent a letter advising the counsel for appellees that the trial court was of the opinion that appellees' motion for partial summary judgment should be granted.

(5) On May 7, 1982, appellant notified the trial court for the first time of its objection to the partial summary judgment on the basis that amendments to the 1949 agreements existed and that the appellees were refusing to produce them in accordance with appellant's request.

(6) On May 10, 1982 the trial court signed The Order Granting Partial Summary Judgment which made the following determinations:

1. The Assignment, Plant Contract and Facilities Contract, all dated March 11, 1949, are not ambiguous.

2. Said documents were not intended to and did not constitute cross-conveyances of gas reserves in the Heyser Field, Calhoun and Victoria Counties, Texas.

3. The Plant Contract and Facilities Contract were duly terminated pursuant to their own terms as of October 1, 1980, with ARCO participating in the vote on said termination.

4. ARCO retains no rights or obligations under the 1949 Plant Contract, or Facilities Contract after the termination thereof.

(7) On May 19, 1982 appellant filed its Third Amended Original Petition without the leave of the court and filed a motion to compel production of the amendments.

(8) On June 2, 1982 appellant filed a submission to demonstrate the existence of numerous amendments. Appellees' responded to appellant's motion by stating that no amendments were available for production. Appellant made a motion for continuance to delay severance of the partial summary judgment so that more discovery could be had.

(9) On June 14, 1982 the trial judge signed an Order of Severance and Final Judgment. The trial court ordered that Count III of appellant's Second Amended Petition be severed and recited that the Order Granting Partial Summary Judgment disposed of appellant's claims not contained in Count III and was a final judgment.[1]

■ Although the order of severance and final judgment signed June 14, 1982 state that partial summary judgment and severance of the cause were rendered and entered on May 10, 1982 and the order

1. Although the Order of Severance and Final Judgment states severance was granted on May 10, 1982, the date of signing, June 14, 1982, determined the beginning of the appellate timetable. *Goff v. Tuchscherer*, 627 S.W.2d 397 (Tex.1982). All jurisdictional requirements for this appeal were complied with. Normally a partial summary judgment is interlocutory and does not become an appealable final judgment until it is severed or the entire lawsuit is disposed of. As in this case, a partial summary judgment also becomes a final appealable judgment when the rest of plaintiff's cause of action is severed from the part decided in the partial summary judgment. *Richards v. Allen*, 402 S.W.2d 158 (Tex.1966).

granting partial summary judgment was signed May 10, 1982, we believe the date of rendition to be April 2, 1982 for the following reasons. Rendition is a judicial act by which the court settles and declares publically the decision of law upon the matters at issue. This occurs when the decision is officially announced either orally in open court, or by memorandum filed with the clerk. *Comet Aluminum Company v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970). Rendition can also occur when a decision is announced by letter from the court to the parties. *Ortiz v. O.J. Beck & Sons Inc.,* 611 S.W.2d 860 (Tex.Civ.App.—Dallas 1980, no writ). April 2, 1982 is the date of rendition of the partial summary judgment because that is the date when the trial court's decision was publically announced both through memorandum filed with the clerk, i.e. the initialed docket entry, and letter to counsel for one of the parties.

Appellant's first four points of error in essence contend the trial court committed error by refusing to allow discovery concerning alleged amendments to the 1949 agreements. Through this discovery appellant hoped to supply a basis for reconsidering the partial summary judgment. Appellant alleges that had these amendments been discovered they would have demonstrated that the trial court's interpretation of the 1949 agreements was incorrect.

■ Appellees insist that appellant's points of error relating to discovery cannot be considered by this court on appeal, because appellant did not present its objection to the partial summary judgment on the basis that more discovery was needed before rendition. Appellees base their contention on the portion of Rule 166–A(c) of the Texas Rules of Civil Procedure which states that issues not presented to the trial court shall not be considered on appeal as grounds for reversal. The Supreme Court in *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 676–77 (Tex.1979) interpreted this portion of Rule 166–A(c) to require that both the reasons for the summary judgment and objections to it be in writing and before the trial judge at the summary judgment hearing and to preclude from consideration on appeal grounds not raised in the trial court in opposition to the summary judgment motion. Under Rule 166–A(c) the trial court need not consider issues raised after summary judgment is rendered and such issues cannot serve as a basis for reversal on appeal.

■ To resolve appellees' contention, it is necessary to determine the meaning of the term, "Issues" as used in the portion of Rule 166–A(c) which reads:

"Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."

The applicability of Rule 166–A(c) to appellant's objection to the partial summary judgment depends on whether the term "Issues" entails an objection of this kind. It is our opinion that the Supreme Court in drafting Rule 166–A(c) intended the term "Issues" to mean legal theories (i.e. grounds of recovery and defenses), and factual theories. The rule was intended to require parties to present all their legal and factual bases for their case before rendition of summary judgment. It was not intended to prevent a trial court with good cause from allowing additional discovery it believes likely to lead to material new evidence. To interpret Rule 166–A(c) to include objections of the kind raised by the appellant would deny the trial court power to reconsider a summary judgment which was granted before the parties had adequate opportunity to develop their case.

There is evidence in the text of Rule 166–A that the term "Issues" in subsection (c) was not intended to include objections to motion for summary judgment of every kind. Subsection (e) states:

"Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal to amend."

If the term "issues" of subsection (c) had been intended to include objections of every kind the quoted portion of subsection (e) would have been superfluous.

■ It is our conclusion that Rule 166–A(c) does not preclude review of the appellant's points of error related to discovery.

This Court must address the issue of whether the trial court abused its discretion by overruling appellant's motions to compel production of documents and to delay severance of the partial summary judgment. The appellant's stated reason for these motions was to obtain discovery of alleged amendments to the 1949 agreements which supposedly support the construction of the agreements urged by the appellant and rejected by the trial court in the partial summary judgment. The appellant relies upon *American Petrofina Co. of Texas v. Crump Business Forms Inc.,* 597 S.W.2d 467 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.) to establish that the ruling of the trial court constituted an abuse of discretion. In that case the court held that the trial court abused its discretion in denying plaintiff's motion requesting production of certain documents and motion for continuance of the summary judgment hearing until such records could be produced and reviewed, though the motions were not filed until the date of the hearing on defendant's summary judgment motion. Important to the court's holding was the fact that the plaintiff diligently attempted to obtain the documents through letters and telephone calls, and had been led to believe they would be produced. Also the documents were material to plaintiff's theory of recovery. *Id.* at 473.

■ The circumstances of the trial court's denial of appellant's motion to compel production of documents in the present case are far different than those present in *American Petrofina Company of Texas v. Crump Business Forms, Inc., supra.* The record in this case reflects a total lack of diligence on the part of appellant to obtain production of the alleged amendments to the 1949 agreements before hearing on the appellees' motion for summary judgment on March 15, 1982. The appellant did not notify the trial court that it believed material amendments to the 1949 agreements existed until May 7, 1982, more than 30 days after partial summary judgment was rendered on April 2, 1982. Although the appellant requested production of amendments to one of the 1949 agreements as early as January 13, 1982, the appellant had the burden of requesting a court order to compel the production of the alleged amendments prior to the summary judgment hearing. The appellant in this case was not led to believe that the alleged amendments would ever be produced. It is incumbent upon parties to complete their discovery prior to trial or summary judgment hearing; if they are unable to do so they should make a motion for continuance prior to trial or summary judgment hearing. In this cause the appellant did not file a motion for continuance prior to the summary judgment hearing. It would be highly disruptive to the trial court proceedings and result in unnecessary expense and delay if parties were freely permitted to seek discovery related to matters disposed of by partial summary judgment long after the motion for summary judgment has been heard and judgment rendered.

Another important difference between this case and *American Petrofina Company of Texas v. Crump Business Forms, Inc., supra* is that in *Crump* there was no question as to the existence of the documents or their materiality to the plaintiff's cause of action; in this case there is no evidence of the existence of amendments which would materially affect the construction of the 1949 agreements given by the trial court. Appellees have stated in their response to appellant's motion to compel production of documents that they carefully reviewed their records and did not find any amendments to the 1949 agreements. There is no proof that appellees possess any amendments. Appellant's submission of various documents to the trial court on June 2, 1982 fails to establish the probability that amendments which would materially affect the court's construction of the 1949 agreements exist; at best the submission indicates minor alterations of the agreements.

■ It is this court's opinion that because the discovery sought by the appellant is related to matters disposed of in the earlier partial summary judgment, the motions were made long after the rendition of the partial summary judgment, and it is doubtful that the discovery would prove fruitful, the trial court's denial of appellant's motion to compel production of documents and motion for continuance was not an abuse of discretion. See *Presbyterian Hospital of Dallas v. National Life and Accident Insurance Company,* 480 S.W.2d 497 (Tex.Civ.App.—Dallas 1972, no writ). Appellant's first four points of error are overruled.

■ Appellant's fifth point of error alleges the trial court improperly denied the appellant the right to amend its petition by the rendition of a partial summary judgment. Appellant contends that the trial court allowed the appellees to attack its pleadings by the wrong method, by motion for summary judgment instead of by special exceptions, and this action denied appellant the right to amend its pleadings. According to appellant, the appellees ground for summary judgment is that appellant's reliance on the 1949 agreements is based upon a legally impossible theory of cross-conveyance and that it has therefore failed to state a claim. Appellant is correct that whether pleadings state a cause of action may not be resolved by summary judgment. In *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974) the Supreme Court stated:

> "Only after a party has been given an opportunity to amend after special exceptions have been sustained may the case be dismissed for failure to state a cause of action.... This court believes that the protective features of special exception procedure should not be circumvented by a motion for summary judgment on the pleadings where plaintiff's pleadings fail to state a cause of action."

See also, *Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex.1983).

■ Appellant's argument wrongly assumes that the partial summary judgment granted by the trial court was made on the pleadings for failure to state a cause of action. Instead this is a case where appellant stated a cause of action in its pleadings and the trial court found against the appellant's interpretation of unambiguous agreements, and rendered partial summary judgment on that basis. The rule of law announced in *Texas Department of Corrections Herring, supra,* does not apply to cases in which the plaintiff has stated a legally sufficient cause of action in its pleadings. The correct method for challenging a plaintiff's cause of action founded on unambiguous writings, where the interpretation thereof is a question of law, is by motion for summary judgment. See *Sun Oil Co. (Delaware) v. Madley,* 626 S.W.2d 726 (Tex.1981); *R. & P. Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517 (Tex.1980).

Since summary judgment was the correct procedure in this case, appellant was properly denied a right to amend its pleadings. Appellant's fifth point of error is overruled.

The appellant's sixth point of error is that the trial court erred in granting judgment as a matter of law for the appellees. Included under this general point of error are three specific subpoints of error. They are:

(1) The trial court erred in entry of a final judgment against the appellant on all claims and causes of action alleged in Count I and Count II of appellant's petition. As a matter of law the grounds presented in Defendant's Motion for Summary Judgment are insufficient to support the judgment as entered;

(2) The trial court incorrectly interpreted the 1949 agreements; and

(3) The trial court incorrectly interpreted the termination clause of the 1949 agreements.

To properly understand appellant's points of error the legal theory upon which appellant bases its cause of action must be explained. Appellant's theory is that the 1949 agreements effected a cross-conveyance of

the gas reserves of the Heyser Field, and that this constituted a conveyance of an indefeasible interest in land. As such, appellant's fixed percentage interest in the gas reserves as provided in the 1949 agreements cannot be altered through exercise of the cancellation provision in the agreements.

■■■ Part of Appellant's first subpoint of error is that the judgment entered by the trial court disposes of claims of the appellant which were not presented to the trial court in appellees' motion for summary judgment. Rule 166–A(c) only permits judgment as a matter of law on issues expressly set out in the summary judgment motion or in an answer or any other response. Appellant more specifically asserts that appellees in their summary judgment motion did not present the issue of that part of the appellant's Count II accounting claim encompassing the period running from March 11, 1949 to October 1, 1980. Appellant's contention is without merit because the appellant in Count II of its petition did not make an accounting claim for that period of time. Appellant's Count II of its Second Amended Original Petition expressly states that the accounting claim is limited to the period following the October 1, 1980 termination. Count II of the appellant's petition alleges in part:

"Such damage can only be ascertained by an accounting by Defendants of all quantities of gas produced in the Heyser Field which have been transmitted to the Plant and otherwise a further accounting of all proceeds attained by Defendants from sale of plant products ... *from and after the date of Defendants' purported termination of the Agreement* up to and including the date of this Court's rendering judgment herein." (emphasis added)

The second part of appellant's first subpoint of error is that appellant created a genuine issue of material fact concerning the part of its Count II accounting plea encompassing the period following October 1, 1980, and therefore a partial summary judgment was rendered contrary to Rule 166–A which permits summary judgment

disposition of a claim only if there is no genuine issue of material fact. This court need not consider this issue because this court has decided to reverse the trial court's judgment which disposes of the appellant's Count II accounting plea and remand it for trial at which time the appellant will have the opportunity to litigate any factual controversies which exist.

■■■ The second claim of the appellant which it contends that the appellees did not present to the trial court in their motion for summary judgment is its estoppel claim. Estoppel is an affirmative defense and the proponent has the burden to assert and prove the defense. Therefore, the appellees were not obliged to raise the issue of estoppel at the summary judgment hearing when the appellant had not done so. The estoppel claim was directly related to and inseparable from the interpretation of the 1949 agreements as determined in the partial summary judgment. Thus, the proper time for the appellant to have presented its estoppel claim would have been before or at the summary judgment hearing. This court cannot now consider appellant's estoppel defense as a ground for reversal of the partial summary judgment. Rule 166–A(c) forbids review of issues not presented to the trial court before rendition of summary judgment. In this case the appellant did not raise the issue of estoppel until May 27, 1982 in its Objection to Entry of Order of Severance and Final Judgment, fifty-five days after partial summary judgment had been rendered on April 2, 1982.

■■■ Appellant further contends that the judgment entered by the trial court improperly disposes of its claim of the existence of material amendments to the 1949 agreements, because this claim was not addressed by the trial court in its order of partial summary judgment upon which the final judgment was based. Such action by the trial court was not error. After rendition of the partial summary judgment, the appellant requested further discovery to determine if the amendments existed, so as to provide a basis for reconsideration of the partial summary judgment. The trial court

denied appellant discovery related to the alleged amendments and as discussed earlier in this opinion, such denial was not an abuse of discretion. Therefore it was entirely proper for the trial court to enter a judgment which foreclosed appellant's arguments based on the alleged amendments, although not addressed in the partial summary judgment.

The appellant's second subpoint of error is that the trial court incorrectly interpreted the 1949 agreements to not have effected cross-conveyances of the gas reserves in the Heyser Field. The appellant's theory of recovery is that the 1949 agreements effected cross-conveyances of gas reserves which are an indefeasible a real property interest not subject to cancellation except by a new act of conveyance. Therefore the appellees' attempted termination of the 1949 agreements did not affect appellant's undivided percentage interest in the gas reserves and plant profits. A finding that the 1949 agreements conveyed gas reserves in place or some other type of indefeasible real property interest is essential to appellant's theory of recovery.

 There is no question that gas reserves in place are a real property interest, but did the 1949 agreements effect a conveyance of gas reserves in place? See *Texas Company v. Daughtery,* 107 Tex. 226, 176 S.W. 717 (1915). The legal test to be used to determine if the 1949 agreements conveyed gas reserves in place is as follows: For a deed or instrument to effect conveyance of real property it is not necessary to have all the formal parts of a deed formerly recognized at common law or contain technical words. If from the whole instrument a grantor and grantee can be ascertained and there are operative words or words of grant showing an intention by the grantor to convey title to a real property interest, which is sufficiently described, to the grantee, and is signed and acknowledged by the grantor it is deed which accomplishes a legally effective conveyance. *Brown v. Byrd,* 512 S.W.2d 753 (Tex.Civ.App.—Tyler 1974, no writ); *Harris v. Strawbridge,* 330

S.W.2d 911 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.); *Harlowe v. Hudgins,* 84 Tex. 107, 19 S.W. 364 (1892).

 The determinative inquiry in this case is whether the 1949 agreements possess language which manifests an intent of the parties to cross-convey gas reserves in place in the Heyser Field. Let us first examine the non-associated gas [2] instrument entitled "CONTRACT FOR CONSTRUCTION AND OPERATION OF GAS WELL GATHERING FACILITIES IN THE HEYSER FIELD, CALHOUN AND VICTORIA COUNTIES, TEXAS". The appellant cites the first paragraph of Article II; "Ownership and Dehydration of Gas Well Gas," in support of its interpretation that the instrument conveyed non-associated gas reserves in place.

> "For the purposes of this agreement the parties hereto have agreed upon the original gas reserves in the non-associated gas sands in the Heyser Field, and in accordance with such agreed estimate the parties to this agreement are the owners of such gas reserves in the proportions set out below after each party's name. . . . "

Rather than expressing an intent to convey non-associated gas reserves, the paragraph instead describes each party's estimated percentage ownership of the non-associated gas reserves in the Heyser Field. The parties were required to estimate their percentage ownership of the non-associated gas reserves in the Heyser Field in order to provide an equitable basis for allocating the use of the capacity of the gas facilities and the ownership of the facilities. There is no language in the instrument which conveys or grants gas reserves.

The parties use unmistakable language of conveyance (i.e. "Each party . . . gives and grants . . . ) to convey the easements and right of ways over the lands and leases of each party. Had the parties intended to convey the non-associated gas reserves it is logical to assume the parties would have used similar language with reference to the non-associated gas reserves.

---

**2.** Non-associated gas reserves are those containing gas that is not associated with any oil.

The appellant would have us construe the opening paragraph of Article II as a recognition of the various interests obtained under the instrument, rather than as a description of the ownership interests of the parties unaffected by the instrument. The appellant's interpretation would be credible if they had either demonstrated that the ownership interest described in the instrument differed from the ownership interests of the parties immediately prior to the execution of the instrument or pointed to language in the instrument which clearly shows an intent to transfer non-associated gas reserves. Having failed to do either, this Court must conclude that the trial court correctly interpreted the non-associated gas instrument as not effecting a cross-conveyance of non-associated gas reserves in the Heyser Field.

Next, let us examine the associated gas[3] instrument entitled, "CONTRACT FOR PURCHASE FOR SALE OF UNDIVIDED INTERESTS IN EXISTING CASING-HEAD GASOLINE PLANT IN HEYSER FIELD, CALHOUN AND VICTORIA COUNTIES, TEXAS AND FOR THE ENLARGEMENT AND OPERATION THEREOF", to see if there is any language which expresses an intent to cross-convey associated gas reserves in place. The instrument lacks any language which could possibly be construed as intending to convey gas reserves in place. The associated instrument, like the non-associated instrument, simply describes the ownership interest of each party in the gas reserves. Appellant, however, contends that the instrument does cross-convey casinghead gas production and that this is equivalent to or accomplishes a cross-conveyance of the associated gas reserves in place.

The associated gas agreement requires the parties to deliver their casinghead gas production to the Plant Operator for processing and apportionment. The agreement in Article VII provides for ownership and residue gas as follows:

"All casinghead gas taken into the Plant for processing therein may be commingled. Each party whose casinghead gas is taken into the Plant for processing shall own and be entitled to receive . . . a portion or percentage of the total products extracted and saved in the Plant equal to its ownership interest . . . in the casinghead gas processed in the Plant . . . Such ownership interest of each party shall be equal to the ownership interest of each party in the original dissolved and associated gas reserves in place in the Heyser Field as specified in Article II. . . It is the intention of the foregoing provisions and of this agreement for the casinghead gas taken into the Plant, the products taken into the Plant and the residue gas, to be owned by parties hereto in exact accordance with the ownership of the original dissolved associated gas reserves in the Heyser Field . . . without regard to the proportions in which the parties may have produced such gas."

The above stated provisions of Article VII do not in any way address or affect the parties' ownership of their associated gas reserves in place; rather they determine the ownership of the gas after it has been produced, delivered to the Plant, and processed. The decisive question which this Court must address is whether these provisions of Article VII effected a cross-conveyance of an indefeasible real property interest.

Justice Goldberg gives an accurate statement of Texas law on the classification of oil and gas interests as realty or personalty in *Phillips Petroleum Co. v. Adams,* 513 F.2d 355 (5th Cir.1975).

"Texas law provides that oil and gas are realty when in place and personalty when severed from the land by production. *Harrington v. Texaco, Inc.,* 5 Cir.1964, 339 F.2d 814, cert. denied, 1955, 381 U.S. 915, 85 S.Ct. 1538, 14 L.Ed.2d 435; *Humble Oil & Refining Co. v. West,* Tex.1974, 508 S.W.2d 812; *Phillips Petroleum Co. v. Mecom,* Tex.Civ.App.1964, 375 S.W.2d 335, no writ; *Lone Star Gas Co. v. Murchison,* Tex.Civ.App.1962, 353 S.W.2d 870,

---

**3.** Associate gas reserves are gas reserves found in conjunction with oil.

writ ref'd n.r.e. With respect to debt obligations incurred as oil and gas are produced, unacrued royalty interests, oil payments and bonus payments are deemed by Texas courts to be interests in realty, for such rights represent interests in the oil and gas still in place on the property. See *Clyde v. Hamilton,* Tex. 1967, 414 S.W.2d 434; *Tennant v. Dunn,* 1937, 130 Tex. 285, 110 S.W.2d 53; *Sheffield v. Hogg,* 1935, 124 Tex. 290, 77 S.W.2d 1021, on rehearing, 124 Tex. 311, 80 S.W.2d 741.... The rule is otherwise when the minerals giving rise to the right to payment have already been taken from the ground, for the right to future payments on past production cannot be said to burden the mineral estate in the same way as an interest in future production. The right to payment for past production obviously has no effect upon the value to the leaseholder of the oil and gas still in the ground at the time the mineral estate changes hands which property is the usual object of leaseholder interest. So it is that accrued royalty interests are personal property, *Miller v. Hathaway,* Tex.Civ. App.1972, 477 S.W.2d 655, no writ, as is the right to payment for severed minerals. *Shell Oil Co. v. State,* Tex.Civ.App. 1969, 442 S.W.2d 457, writ ref'd n.r.e." *Id.* at 363

▪ Oil and gas are personalty when severed from the land by production. If the minerals which give rise to the payment have already been taken from the ground then the right to payment is personalty. Under Article VII the gas which gives rise to the right to share in production is not in place, but has been severed. The language of Article VII indicates that each party owns all the casinghead gas it produces until it is delivered to the Plant, at which time ownership is assigned according to a preagreed percentage.

"Each party whose casinghead gas is taken into the Plant for processing shall own ... It is the intention of ... this agreement for the casinghead gas taken into the Plant, to be owned ... "

The parties only have a right to share in gas production which is delivered to the Plant. Because the gas which gives rise to the right to receive a percentage of production is severed the interest in gas which is created by the instrument is correctly classified as personalty.

▪ In summary, the associated gas instrument did not vest appellant with an indefeasible realty interest in gas for the following reasons. It is clear that the instrument did not convey an interest in the parties' gas reserves in place derived from their leases, because the leases or gas reserves in place were not the subject of any conveyancing language and there was no expression in the instrument of an intent to convey the gas reserves in place. The instrument did provide for a cross-conveyance of gas production after it was delivered to the Plant, but at the time the conveyance is effected under the instrument the gas is severed and correctly classified as personalty under Texas law. Therefore, the instrument only creates a defeasible ownership right to personalty. The ownership interest of appellant in current gas production created by the associated gas instrument is subject to cancellation upon proper exercise of the termination provision.

Appellant's third subpoint of error is that the trial court incorrectly interpreted the termination clauses of the 1949 agreements to allow appellees to terminate the agreement. On October 1, 1980, the appellees voted to terminate the 1949 agreements and executed a new agreement to govern the operation of the Plant and Facilities. The termination clauses of the associated and non-associated gas instruments are identical except that one clause refers to the parties as "Plant Owners" and the other as "Owners of the facilities." The termination clause is set forth below with the differences indicated by brackets. The termination clause reads:

"Unless sooner terminated by a vote of the Plant [Owners of the facilities] Owners who own at the time the vote is taken a sixty-six and two-thirds (66⅔) percent or more interest in the Plant, this con-

tract shall be for a term of ten (10) years from the date hereof and shall continue in force and effect thereafter until terminated by such vote of the then Plant Owners [Owners of the facilities]. Should one party hereto hold as much as sixty-six and two-thirds (66⅔) percent interest in the plant, [facilities], the favorable vote of at least one other party shall be required for any such termination. Should one party hereto hold as much as a thirty-three and one-third (33⅓) percent undivided interest in the plant the vote of at least one other party shall be required to defeat the vote to terminate this contract by all of the remaining parties."

Appellees complied with the express terms of the termination provision.

Appellant did not participate in the execution of the new agreement. The new agreement basically provides for continued operations of the same Plant and Facilities by the same operator for the same parties, covering the same gas reserves in the Heyser Field. The new agreement does make some changes in the operating provision, but the primary change it effects is a reduction in the appellant's percentage interest in the gas production and a correlative increase in the percentage interest of the appellees.

This reduction is accomplished by compensating each party on the basis of actual production as opposed to a fixed percentage. Because appellant produced its leases at a greater rate than the appellees in the early years, its production has significantly decreased in proportion to appellees' production in recent years. Thus, compensation on the basis of actual production has significantly reduced the revenues of the appellant from the Plant and Facilities. Because appellant heavily produced its gas reserves in the years before the termination date, the appellees during that time have received a percentage of the gas reserves contributed by appellant substantially in excess of appellees' proportionate interest in the combined original gas reserves in the Heyser Field. At the time of the termination the situation had reversed; appellees

were then contributing gas reserves at a higher rate than the appellant. Had the 1949 agreements continued in effect until the sands of Heyser Field been totally depleted, all production disparities would have been remedied and each party would have received its original share of gas reserves in place.

Both the associated and non-associated 1949 agreements prohibit a reduction of a party's estimated interest in the gas reserves.

The associated gas instrument states:

"No change in the calculations of reserves or ownership of the reserves in the presently known and identified sands as set out above shall be made in making such new schedule, except as may be necessary to include therein the additional defined limits of the 7100-foot sand."

The non-associated instrument states:

"No change in the calculations of reserves or ownership of the reserves in the presently known, indentified and defined sands as set out above shall be made in making such new schedule."

Appellant contends that these provisions manifest an intent of the parties to maintain the ownership percentage at a fixed point to insure that each party would eventually receive upon total depletion of Heyser Field its original share of the gas reserves. Consistent with this interpretation is appellant's position that the prohibition against change in interest clause imposes upon the termination clause an implied covenant not to exercise the termination clause to circumvent its effect and then continue operations.

There is no express limitation on the exercise of the cancellation clause; if there is a limitation it must be implied. Implied provisions are not favored by the law. For a provision to be implied it must either arise from the language of the contract or be indispensible to effectuate the intent of the parties. 14 Tex.Jur.3d Contracts § 220 (1981).

In addition to the express and implied limitations the parties may have imposed upon the termination clause, the law places certain restrictions on the termination of a contract by less than all the parties.

"Even though there may be an option to terminate the contract, yet the parties should not be permitted to exercise it improperly and unjustly to the injury of the other party and at the same time escape all liability."

*C.S. Matin & Son v. John Bonara & Co.,* 214 S.W. 841 (Tex.Civ.App.—Texarkana 1919, no writ).

It is the opinion of this Court that the 1949 agreements contain an implied covenant to not terminate the agreements to evade the force of the prohibition against the change in interest clause. The parties have clearly expressed their intent to fix the ownership interest of each party. To interpret the cancellation clause to permit a change in the ownership interest through cancellation of the 1949 agreements and execution of a new agreement would do violence to the obvious intention of the parties. This is a case where a covenant limiting the exercise of the termination must be implied to effectuate the intent of the parties. This Court finds that the cancellation clause was intended by the parties primarily to provide a fair and efficient means for terminating operation of the Plant and Facilities. It certainly was not intended to provide a way for the parties to escape the effect of a specific provision in the contract. The proper way to accomplish that is through modification of the contract with the consent of all the parties.

This Court is also of the opinion that to allow the appellees to terminate the 1949 agreements to reduce the appellant's ownership interest and increase their own at a time when they had received more than their share of the original gas reserves and the disparity was beginning to be rectified, would be unjust to the appellant. Appellees' exercise of the termination clause and execution of a new agreement in this manner constitutes a violation of the legal duty not to exercise a cancellation option unjustly to the injury of the other party.

Appellees had no contractual authority to terminate the 1949 agreements, execute a new agreement reducing the appellant's ownership interest, and continue operations substantially the same as before the termination, all without the consent of the appellant. The termination clause can only be exercised with legal effect in compliance with all the express and implied terms of the agreements. Therefore the parties are still bound to the terms of the 1949 agreements and the new agreement is void.

Judgment reversed and remanded.