C. Diane **CHRISTENSEN**, Appellant,

v.

**SHERWOOD INSURANCE SERVICES**, Appellee.

**No. 9613.**

Court of Appeals of Texas,
Texarkana,

Aug. 16, 1988.

Rehearing Denied Sept. 13, 1988.

Fred Wahrlich, Thelen, Marrin, Johnson & Bridges, Houston, for appellant.

Edward J. Howlett, II, Kirklin, Boudreaux & Joseph, Houston, for appellee.

CORNELIUS, Chief Justice.

C. Diane Christensen appeals from an adverse summary judgment rendered in her suit against Sherwood Insurance Services. Christensen's suit charged that Sherwood, an insurance broker, failed to use due care, committed fraud, breached a duty of good faith and fair dealing, and conspired to violate the Texas and California Insurance Codes and the Texas Decep- tive Trade Practices Act, in connection with Christensen's insurance claim and resulting negotiations with her insurance carrier. We find that Sherwood failed to establish its right to summary judgment and therefore reverse the judgment and remand the case for trial on the merits.

Christensen, a California resident, owns the Town Lake Village Apartments (the insured property) in Baytown, Texas. Sherwood, a surplus lines broker, secured insurance on the insured property with Integrity Insurance Company at the request of Christensen's insurance agent, Thompkins and Company.

In August of 1983, Hurricane Alicia damaged the insured property. Christensen filed a claim with Integrity through Sherwood's claims manager, Olga Peters. Integrity hired GAB Services of Los Angeles to adjust the claim, and it assigned its employee, Roy Mercer, to the job.

Ed Radtke, a representative for Thompkins, set up a meeting for October 20, 1983, between William Benevento, Christensen's business representative, Mercer, and Radtke to discuss a settlement of the hurricane claim. Radtke invited Peters to the meeting so that she "could be informed as to what was taking place." Christensen did not attend the meeting. The day before the meeting, Peters spoke with Jean Osborne of MTS. Peters told Osborne that Benevento was anxious to get started with repairs as soon as possible, but that he was awaiting "the okay" from the adjuster. Osborne's notes of the conversation with Peters indicate that Osborne told Peters to advise Benevento to begin repairs immediately.

During the meeting, Benevento raised the issue of how the insurance proceeds could be used, because Christensen hoped to use some of the proceeds to renovate the property. Mercer indicated that Christensen could use the proceeds on the property any way she chose. Benevento and Radtke were of the same opinion and asked Peters for her opinion. Peters answered that it "was possible." Integrity later took the position that the proceeds could only be used for damage repair.

Benevento and Mercer also discussed estimates for the repair costs. In pretrial depositions, Benevento testified that Mercer offered and he accepted a settlement offer of $4,220,000.00, plus other incidentals. Contrarily, in her deposition testimony, Peters testified she only understood Mercer to say that he would recommend that Integrity pay a certain figure. Benevento testified that in reliance on the supposed settlement, he contracted with construction firms to undertake the repairs to the insured property.

Integrity began to pay Christensen the proceeds for some of the losses suffered from the hurricane damages. On December 9, 1983, it paid $250,000.00 for rental losses due to Hurricane Alicia, and on January 31, 1984, it made a partial payment of $3,497,500.00 for general losses from the hurricane. Integrity delivered drafts for these payments through Sherwood, by Peters.

In December 1983, the insured property suffered additional damages when freezing weather struck Baytown. Christensen again notified Peters and filed a claim. Peters hired Mercer to adjust the freeze claim. On October 10, 1984, Integrity made a partial payment of $125,000.00 for the freeze losses.

On January 12, 1984, MTS notified Todd Smith of Sherwood that they were planning to cancel Christensen's policy with Integrity, because of its unprofitability. Smith attempted to find a reinsurer or secure a replacement policy but was unable to do so, and MTS cancelled the policy.

In February 1984, MTS removed Mercer from doing the adjustment work first for the freeze claim and, shortly afterwards, for the continuation of the hurricane claim. MTS in its capacity as Integrity's managing general agent then hired Al Long of Adjusters Incorporated of Texas to take over and readjust both the hurricane and freeze claims. Peters knew that MTS had hired a different adjuster to take over the freeze claim, but did not realize that Mercer had been replaced on the hurricane claim.

In April 1984, Integrity repudiated its obligation to pay for the hurricane and freeze claims, because it contended that Christensen had misrepresented the amount of damage. Integrity later filed suit against a number of defendants, including Christensen, alleging fraud, conspiracy, intentional misrepresentation, negligence and gross negligence in adjusting and estimating losses, breach of warranty, and failure to safeguard against further losses. In its petition, Integrity contended that the insurance policy limited Christensen's use of the proceeds to damage repair only.

Christensen then filed her third-party action against Sherwood alleging that it was guilty of unfair claims settlement practices, negligent misrepresentation, fraud, conspiracy, and breach of a duty of good faith and fair dealing. Sherwood filed a motion for summary judgment, which, after Christensen's response and a hearing, was granted.

■ When a plaintiff asserts multiple causes of action and the defendant moves for summary judgment, he must conclusively demonstrate that issues of fact do not exist as to at least one element of each of the plaintiff's asserted causes of action. *American Petrofina Company of Texas v. Crump Business Forms, Inc.*, 597 S.W.2d 467 (Tex.Civ.App.–Dallas 1980, writ ref'd n.r.e.).

One of Christensen's causes of action is that Sherwood conspired with others to commit fraud against Christensen and to violate the Texas Deceptive Trade Practices Act and the Texas and California Insurance Codes. As evidence supporting its motion for summary judgment, Sherwood relied on an affidavit by Olga Peters in which she asserted that she had not conspired with anyone for such purposes. Sherwood also relies on the deposition testimony of Diane Christensen, her father, Allen D. Christensen, Radtke, Benevento, and Nancy Arkley (an employee of Christensen's management company), all of whom generally said that they had no personal knowledge that Sherwood was involved in a conspiracy against Christensen. To resist

summary judgment, Christensen relied generally on the facts she alleged to support her actions for misrepresentation and lack of fair dealing, which are supported by deposition testimony, to raise an inference that a conspiracy existed.

■ The essential elements of conspiracy are: (1) the involvement of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex.1983). Though Sherwood argues the nonexistence of a conspiracy as a whole, its evidence primarily is relevant to the nonexistence of an agreement between itself and any of the other purported co-conspirators.

■ In order to carry its burden as movant for summary judgment, Sherwood must produce summary judgment evidence conclusively negating one or more of the elements of conspiracy. Only then does the burden shift to Christensen to raise an issue of fact by her own summary judgment evidence. *Bankers Commercial Life Insurance Co. v. Scott,* 631 S.W.2d 228, 232 (Tex.App.–Tyler 1982, writ ref'd n.r.e.). Merely proving that Christensen lacks evidence to support an essential element of her cause of action does not conclusively prove that the element does not exist. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970); *Orozco v. Texas General Indemnity Company,* 611 S.W.2d 724 (Tex.Civ.App.–El Paso 1981, no writ); *American Petrofina Company of Texas v. Crump Business Forms, Inc.,* supra. All doubts as to the existence of a material fact must be resolved against the movant. *Parrott v. Garcia,* 436 S.W.2d 897 (Tex. 1969).

■ Tex.R.Civ.P. 166a(c), which outlines what type of evidence is proper in determining whether a genuine issue of material fact exists, states:

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and *could have been readily controverted.* (Emphasis added.)

Statements by alleged members of a conspiracy are not sufficient to conclusively establish the nonexistence of an agreement because such witnesses would have a strong motive to deny a conspiracy, and the statements are not readily controvertible. *American Petrofina Company of Texas v. Crump Business Forms, Inc.,* supra. Moreover, the agreement element of a civil conspiracy is usually proven through circumstantial evidence and logical inferences. Thus, the Court of Appeals in *American Petrofina* stated regarding the agreement element of a conspiracy case, "Admittedly, this is a difficult element for a plaintiff to prove, but it is even more difficult for a defendant to negate as a matter of law." *American Petrofina Company of Texas v. Crump Business Forms, Inc.,* supra; *see also, Ashcroft v. W.T. Bradshaw and Co.,* 601 S.W.2d 809 (Tex.Civ.App.–Eastland 1980, writ ref'd n.r.e.).

■ As stated earlier, Sherwood relied on an affidavit by Olga Peters denying their involvement in a conspiracy. This, however, is the kind of evidence that cannot support a summary judgment because it cannot be readily controverted. *Bankers Commercial Life Insurance Co. v. Scott,* supra; *American Petrofina Company of Texas v. Crump Business Forms, Inc.,* supra.

Sherwood also relies on deposition testimony by Christensen's own witnesses where they state that they had no personal knowledge of facts that would support the conspiracy charges. Reliance on this kind of evidence confuses the different burdens imposed on a plaintiff in a trial on the merits and in a summary judgment proceeding. This evidence does no more than show that Christensen will have a difficult time getting beyond the instructed verdict stage of a trial on the merits; it does not show that as a matter of law Sherwood is entitled to judgment. *Orozco v. Texas General Indemnity Company,* supra; *Jones v. General Electric Company,* 543 S.W.2d 882 (Tex.Civ.App.–El Paso 1976,

writ ref'd n.r.e.). It is not incumbent on the plaintiff to produce evidence raising an issue of material fact about an essential element of its claim until the defendant/movant first conclusively negates such an issue. *Orozco v. Texas General Indemnity Company,* supra.

Since Sherwood's summary judgment evidence was insufficient to conclusively negate one of the elements of the conspiracy action, summary judgment was improper.

The judgment is reversed and the cause remanded for trial.