**LESBROOKTON, INC., Assignee of Dibo Attar, Trustee, and Dibo Attar, Individually, Appellants,**

v.

**D. Tim JACKSON, et al., Appellees.**

**No. 07–89–0058–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 28, 1990.

Rehearing Overruled Oct. 2, 1990.

Weil, Gotshal & Manges, Edward F. Fernandes, Houston, for appellants.

Fulbright & Jaworski, William D. Wood, Houston, for appellees.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

Lesbrookton, Inc., assignee of Dibo Attar, trustee, and Dibo Attar, individually, complain of the take-nothing summary judgment rendered in their multi-claim action against James H. Stuckey, and the summary judgment rendered for Stuckey on his counterclaims against them. We will, on the rationale expressed, reverse the summary judgment rendered and remand the causes.

· The actions underlying this appeal had their inception in an 8 March 1982 sales agreement, whereby Attar, as trustee and acting on behalf of Lesbrookton N.V. pursuant to a power of attorney, agreed to purchase properties owned by Stuckey. Lesbrookton N.V. was a Netherlands Antilles corporation, which was dissolved on 6 April 1986 during the developing controversy, and the present causes of action were transferred and assigned to its sole shareholder, Lesbrookton, Inc., the board chairman of which is Attar.

On 30 April 1982, Attar, acting both in his trustee capacity and individually, executed an indemnity agreement to secure the purchase. Later, Lesbrookton and Attar, maintaining their actions were solely an accommodation to other parties, the Jackson Group, for which they acted as a "strawman" in the Group's acquisition of the Stuckey properties, refused to consummate the purchase. Stuckey threatened suit for damages.

A subsequent agreement was embodied in a 9 March 1983 letter agreement. The terms of the letter agreement required Stuckey's relinquishment of all claims against Attar and the Jackson Group, including all of Attar's obligations under the sales agreement and indemnity agreement, and all liens on the properties; the execution by the Jackson Group of a promissory note payable to Stuckey for the principal sum of $1,000,000.00 (Stuckey's note); an unconditional irrevocable letter of credit for $1,000,000 to secure payment of Stuckey's note; a guaranty of the interest on Stuckey's note by Attar individually; and a release of claims to be signed by Attar and by D. Tim Jackson and Base Financial Realty & Development, Inc. of the Jackson Group. These documents were subsequently executed, together with a promissory note in the sum of $1,000,000 executed by the Jackson Group and payable to Attar, Trustee, to secure the letter of credit posted by Lesbrookton. The release, executed by Stuckey and by Attar, individually and as trustee, provided that each released and forever discharged the other

> from any and all claims, demands, damages, debts, liens and causes of action of any and every nature whatsoever, known or unknown whether at law or in equity, in contract or in tort ... which [either] ever had, now has, or may hereafter acquire or be entitled to against [the other] for or on account of, relating to, arising from, or in any way connected with or concerning the Sales Agreement or the Indemnity agreement, or the properties....

The documents, including the release, were executed on 23 March 1983.

After the principal of Stuckey's note was not paid when it matured in March of 1985, the letter of credit securing it was honored in satisfaction of the note obligation. Thereafter, a chronology of the subsequent pertinent events is expressed as follows:

16 August 1985 Attar, as trustee, initiated the present Lesbrookton action against the Jackson Group, cause no. 85–46,905, to collect the principal and interest due on the note executed by the Jackson Group to secure the letter of credit.

27 December 1985 Stuckey filed in cause no. 85–68,553 his action against Attar individually to collect the final interest payment due under Attar's guaranty of the interest on Stuckey's note.

31 January 1986 Attar answered Stuckey's action with a general denial.

4 April 1986 Stuckey moved for summary judgment in his action against Attar for breach of the guaranty.

22 April 1986 Attar filed an untimely response to Stuckey's motion for summary judgment.

25 April 1986 Attar filed an amended answer to Stuckey's action, alleging Stuckey participated in a conspiracy to fraudulently induce Attar to execute, among other documents, the $1,000,000 letter of credit and the guaranty. Simultaneously, Attar counterclaimed on the same basis, seeking actual and punitive damages plus attorney's fees.

25 April 1986 Attar, trustee, filed an amended petition in the Lesbrookton action, cause no. 85–46,905, naming Stuckey as a defendant and alleging that he and the Jackson Group conspired to fraudulently induce Attar to enter into the transaction culminating in the 1983 agreements.

29 May 1986 Stuckey obtained summary judgment on his claim against Attar in cause no. 85–68,553.

3 June 1986 Stuckey moved for a severance of his action against Attar from Attar's counterclaim.

14 July 1986 Severance was ordered, and summary judgment previously granted in Stuckey's action was made final by express order of the Court.

4 June 1987 Summary judgment granted in Stuckey's action was affirmed on appeal, the appellate court stating in an unpublished opinion that absent an affirmative indication of the trial court granting Attar leave to file his late response or amended pleadings, it must be presumed the court refused the late filings and did not consider Attar's response in rendering summary judgment. *Attar v. Stuckey*, No. 01–86–00690–CV (Tex.App.—Houston [1st Dist.], June 4, 1987, no writ).

21 September 1987 Nonsuit without prejudice was granted on Attar's severed counterclaim filed in Stuckey's action, cause no. 85–68,553.

17 March 1988 Stuckey moved for summary judgment in the Lesbrookton action, cause no. 85–46,905, on the grounds that the pleaded cause of action for "conspiracy to fraudulently induce" is barred by (1) the compulsory counterclaim rule and (2) the doctrine of res judicata.

16 August 1988 Stuckey filed his second amended original answer and original counterclaim in the Lesbrookton action, bringing Attar, individually, into the suit and alleging that Attar, individually, and Lesbrookton breached the release by asserting claims against him in the Lesbrookton action.

8 September 1988 Attar, individually, filed his original answer and counterclaim to Stuckey's second amended original answer and original counterclaim in the Lesbrookton action, alleging a conspiracy between Jackson and Stuckey to induce his execution of the release and the guaranty, and Stuckey's breach of the release by bringing him, Attar, into the Lesbrookton action in his individual capacity.

15 September 1988 Stuckey was awarded a take-nothing summary judgment in the action by Attar, trustee, against Stuckey.

3 October 1988 Stuckey filed an original answer to the counterclaim of Attar, and his first amended counterclaim.

3 October 1988 Stuckey moved for a take-nothing summary judgment on Lesbrookton's and Attar's actions on the grounds that (1) the actions are barred by (a) the

compulsory counterclaim doctrine, (b) the doctrine of res judicata, (c) the two- and four-year statutes of limitations, and (d) a contract of release; and (2) Attar cannot establish at least one element necessary for recovery. Stuckey also moved for summary judgment on his counterclaim for damages on the ground that Lesbrookton and Attar breached the 23 March 1983 release.

13 October 1988 A take-nothing summary judgment was rendered against Attar, individually, and Attar, trustee, and Lesbrookton on their claims against Stuckey and in favor of Stuckey on his claims against Lesbrookton and Attar individually.

17 October 1988 Lesbrookton secured a default monetary judgment against the Jackson Group, except for one individual thereof with whom they had settled.

30 November 1988 The trial court rendered a final judgment in the cause, incorporating its 15 September 1988 and 13 October 1988 summary judgments, and its 17 October 1988 default judgment, and reiterating the adjudged amounts of damages, attorney's fees and interest.

The Jackson Group did not appeal from the default judgment rendered against them, and that part of the trial court's 30 November 1988 judgment has become final. As a result, it will be severed from the remainder of the judgment.

With two multi-faceted points of error, Attar, individually, and Lesbrookton each appeal from the summary judgment. By their first point, they challenge the take-nothing judgment rendered against them on their claims against Stuckey; by their second point, they attack the summary award of actual damages, attorney's fees, and interest to Stuckey on his counterclaims for breach of contract.

The trial court did not specify the grounds upon which summary judgment was rendered. This appeal, then, requires us to determine whether, based on the summary judgment evidence, Stuckey, as he contends, established his entitlement to the summary judgment on the issues expressly presented to the trial court in his motion for summary judgment by (1) conclusively proving all of the elements of at least one of his affirmative defenses, or disproving at least one of the elements of each of Lesbrookton's and Attar's causes of action, and (2) conclusively proving his counterclaim. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

In this regard, Stuckey had the burden of proof to show the absence of a genuine issue of material fact and his entitlement to summary judgment as a matter of law. To determine the existence of a genuine issue of material fact, the evidence and all reasonable inferences favorable to Lesbrookton and Attar are accepted as true, and all conflicts in the evidence are disregarded. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

## TAKE–NOTHING PORTION OF THE SUMMARY JUDGMENT

For Stuckey, as movant, to be entitled to the take-nothing summary judgment against Lesbrookton and Attar, the summary judgment proof must show, with respect to each of their pleaded causes of action, the absence of a genuine issue of material fact to the establishment of all the elements of one of his affirmative defenses of res judicata, compulsory counterclaim, statutes of limitations, and release. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Alternatively, to merit the same entitlement, Stuckey must show that at least one element of each of Lesbrookton's and Attar's pleaded causes of action has been established conclusively against them. *Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex.1987).

### 1. On Attar's individual claims

When Attar, as trustee, amended the original Lesbrookton action for recovery on the Jackson Group's note to include Stuckey and allege the fraudulent conspiracy to induce him to enter into the transaction, Stuckey answered and counterclaimed to recover damages from Attar individually and Lesbrookton for their breach of the release by the prosecution of the lawsuit.

Attar responded individually by answering Stuckey's counterclaim and filing his own designated counterclaim. By his counterclaim, Attar charged Stuckey with a civil conspiracy to commit fraud in the inducement of the release, his guaranty, and associated documents. In the alternative, Attar pleaded for rescission of the transaction on the bases of three species of fraud, usury by the demand of usurious amounts upon default under the sales agreement and indemnity, and breach of contract, *i.e.*, the release, by Stuckey's institution and maintenance of his counterclaims in this suit, and resultant damages.

Subsequently, Stuckey moved for summary judgment on Attar's counterclaims and on his own counterclaim for Attar's breach of the release by filing his counterclaim. In support of his motion for summary judgment on Attar's counterclaims, he presented the bar of (1) the compulsory counterclaim rule, (2) res judicata, (3) the two- and four-year statutes of limitations, and (4) the release.

Stuckey's interposed bar by the compulsory counterclaim rule and res judicata is based upon the final 29 May 1986 summary judgment rendered in cause no. 85–68,553. By the judgment, affirmed on appeal, Attar was held liable on his guaranty to pay the interest on Stuckey's note.

■ Basically, the res judicata doctrine bars litigation by new proceedings of a cause of action previously and finally determined between the parties on the merits by a court of competent jurisdiction. *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984). The judgment in the first suit precludes a second suit by the parties and their privies not only on the matters actually litigated, but on causes of action or defenses arising out of the same subject matter which, with the use of diligence, might have been litigated in the first suit. *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex.1971). However, res judicata applies only to the cause of action actually filed by the plaintiff and not to cross-actions which might have been filed by defendant, unless the compulsory counterclaim rule is applicable. *Swiss Ave.*

*Bank v. Slivka*, 724 S.W.2d 394, 396 (Tex. App.—Dallas 1986, no writ).

A compulsory counterclaim is defined as any counterclaim (1) within the jurisdiction of the trial court, (2) not the subject of a pending action, (3) which is mature at the time of filing the pleading, (4) arising out of the same transaction or occurrence as the claim asserted by the opposing party, and (5) not requiring for adjudication the presence of third parties of whom the court cannot obtain jurisdiction. Tex.R.Civ.P. 97(a). When a counterclaim is compulsory, the defendant is barred from subsequently recovering on it against the plaintiff in a later suit. 2 R. McDonald, Texas Civil Practice in District and County Courts § 7.49 (rev. 1982).

By operation of the res judicata doctrine and the compulsory counterclaim rule, Attar is barred from recovering on any of his counterclaims which were compulsory, but which he failed to advance, in Stuckey's action in cause no. 85–68,553. This obtains because the final judgment in that action is conclusive of any claim that was a compulsory counterclaim. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 539 (Tex. 1973).

### a. Attar's claims of fraud

■ Attar does not suggest that his claims of conspiracy to defraud, fraudulent inducement to enter into the transaction and execute the documents, and fraud in a real estate transaction, are outside the scope of rule 97(a); indeed, he recognized the rule's application by filing his counterclaim in Stuckey's prior action, albeit the filing was untimely. In this connection, the rule 97(a) "same transaction or occurrence" requirement, which has been broadly construed, *Griffin v. Holiday Inns of America*, 496 S.W.2d at 539, clearly encompasses Attar's claims of fraud, particularly under the "logical relationship" test adopted to prevent relitigation of the same set of facts. *Jack H. Brown & Co. v. Northwest Sign Co.*, 718 S.W.2d 397, 398–400 (Tex.App.—Dallas 1986, writ ref'd n.r. e.).

Thus, Attar's claim of fraudulent inducement to execute his guaranty plainly should have been litigated in Stuckey's prior action. *Hampton v. Long*, 686 F.Supp. 1202, 1204 (E.D.Tex.1988) (buyer's claim of fraudulent inducement held to be compulsory counterclaim to bank's recovery on guaranty). Consequently, he cannot now assert that fraud claim in order to subject Stuckey's earlier summary judgment to collateral attack. *White v. White*, 142 Tex. 499, 179 S.W.2d 503, 506 (1944).

Moreover, Attar's remaining claims of fraud in the conspiracy, inducement, and transaction, if maintainable in his individual capacity, all relate to and are grounded in the same transaction or occurrence that gave rise to his execution of his guaranty. *Upjohn Co. v. Petro Chemicals Suppliers, Inc.*, 537 S.W.2d 337 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.) (claim on unpaid invoices held to be compulsory counterclaim of conspiracy to defraud); *Hampton v. Long*, 686 F.Supp. at 1207 (claim of fraud in real estate transaction held to be compulsory counterclaim of claim on guaranties of debt). Hence, to the extent these claims may have been advanced by Attar in his individual capacity, they constituted compulsory counterclaims to Stuckey's prior suit under rule 97(a), the operation of which bars their assertion in this action. *Stringer v. Munnell*, 390 S.W.2d 484, 484–85 (Tex.Civ.App.—Houston 1965, writ ref'd); *Beach v. Runnels*, 379 S.W.2d 684, 685–86 (Tex.Civ.App.—Dallas 1964, writ ref'd).

Notwithstanding, Attar proposes that the court's original grant to Stuckey of a partial summary judgment, which was not made final until the severance, indicates that the court, in its discretion, accepted and considered his untimely filed answer and counterclaim. Therefore, he says, under Local Rule 3.2.4 of the Civil Trial Division, Harris County District Courts, his severed counterclaim became a "new case ... assigned to the court where the original case pends ... with a letter designation." Then, he argues, since his counterclaim was by definition already pending in Stuckey's action, it was not subject to the compulsory counterclaim rule. We are not persuaded to accept the proposal.

As we previously noticed, the First Court of Appeals, in resolving Attar's appeal from the summary judgment granted Stuckey, indulged in the presumption that the trial court refused Attar's late filings. The presumption is valid, for if the trial court had accepted and considered Attar's counterclaim, then the question whether he was fraudulently induced to execute the guaranty was a fact issue, *Oilwell Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487, 490 (Tex.1973), precluding summary judgment for Stuckey. Tex.R. Civ.P. 166a(c).

We are aware of the discretionary power of a trial court to sever a counterclaim, preserve it for trial at a later date, and proceed to trial on the unsevered action. *McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d 347, 351 (Tex.1968). We also are aware that a properly severed counterclaim is not barred by the failure to assert it as a compulsory counterclaim in the main suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985); *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982); *McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d at 351.

However, in each situation where the severed counterclaim was held not to be barred by the failure to assert it in the primary action, the counterclaim was timely filed—or, the late filing was permitted by the trial court, *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d at 382–84—was properly before the court for consideration, was severed for later resolution, and was excluded from the adjudication of the primary action. *See, e.g., id.; Cherokee Water Co. v. Forderhause*, 641 S.W.2d at 523, 525; *McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d at 351–52; *Chandler v. Hendrick Memorial Hospital*, 317 S.W.2d 248, 251 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.); *Morrison v. St. Anthony Hotel*, San Antonio, 295 S.W.2d 246, 249 (Tex.Civ. App.—San Antonio 1956, writ ref'd n.r.e.).

That is not the situation depicted by this record.

This record reveals that not only was Attar's counterclaim filed untimely, but its late filing was refused by the trial court, which negates the idea that the counterclaim was specifically severed for later adjudication. It follows that since Attar could have interposed his counterclaims of fraud by the use of due diligence and litigated it in Stuckey's action, but failed to do so, he cannot individually litigate the counterclaims of fraud in this action. *Abbott Laboratories v. Gravis,* 470 S.W.2d at 642.

### b. *Attar's claim of usury*

■ Attar's usury claim is based upon Stuckey's demands made after breach of the sales agreement and the indemnity and before the execution of the release. It is at once apparent that since Attar's claims of fraud are not available to him individually to vitiate the release, his usury claim is foreclosed by the plain language of the release.

### c. *Attar's claim of breach of contract*

■ Still, although Attar individually cannot prevail in this cause on his claims of fraud and usury, there remains his individual breach of contract action, filed on 8 September 1988 and based on Stuckey's breach of the terms of the release by filing his counterclaim on 16 August 1988. He contends, in essence, that Stuckey failed to establish as a matter of law that this cause of action was barred by Stuckey's affirmative defenses of res judicata, the compulsory counterclaim rule, the statutes of limitations, and the release.

Obviously, this cause of action had not matured at the time of Stuckey's earlier suit so as to fall within the bar of the compulsory counterclaim rule and res judicata. Stuckey does not so contend. Moreover, on appeal, Stuckey candidly concedes that the cause of action is not time barred. Instead, he urges that Attar's cause of action is barred by the release.

The release formed a contract between the parties, subject to avoidance by the establishment of the alleged fraud, *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990); but, since Attar is barred from asserting the alleged fraud in this action, the effect of the release's provisions is determined by the rules governing construction of contracts. *Loy v. Kuykendall,* 347 S.W.2d 726, 728 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Therefore, while viable, the release bars, in its essential words, "any and all ... causes of action ... arising from ... the Sales Agreement or the Indemnity Agreement, or the properties." *Hart v. Traders & General Ins. Co.,* 144 Tex. 146, 189 S.W.2d 493, 494 (1945).

Of course, the release must be accepted for what is purports to be, *id.,* that is, a bar to an action arising from the sales agreement, the indemnity agreement, or the properties that are the subject of the sales agreement. Encompassing as it does the contractual element of mutual intent, *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 92 (Tex.1973), the release itself contains no expression of intent to bar an action for its breach, and the courts cannot supply that intent for the parties. *Williams v. Glash,* 789 S.W.2d at 265. If so, then Stuckey would be estopped to recover on his own breach of contract action founded upon the release.

Thus, to completely defend against Attar's entire individual counterclaim, Stuckey had the burden to establish from the record before the trial court that, as a matter of law, the release was a bar to Attar's action for its breach. Having failed to do so, he was not entitled to the take-nothing summary judgment on Attar's entire action. Thus, the take-nothing summary judgment against Attar must be reversed. *Loy v. Kuykendall,* 347 S.W.2d at 728.

### 2. On Lesbrookton's fraud claim

By its live trial pleading, Lesbrookton, acting through Attar as trustee, alleged that D. Tim Jackson and Base Financial Realty & Development, Inc., two members of the Jackson Group, and Stuckey fraudulently conspired to induce Lesbrookton to enter into the transaction consummated on

23 March 1983. However, the parties, apparently assuming that in filing his individual actions Attar was acting on behalf of Lesbrookton, attribute to Lesbrookton all of Attar's allegations of fraud, usury, and breach of contract. The assumption is understandable in the light of 5,147 pages of pleadings contained in the transcript on appeal; nevertheless, since the cause of action pleaded by Lesbrookton itself against Stuckey is actually limited to the claim of fraudulent inducement, we will confine our address to that claim.

### a. Stuckey's compulsory counterclaim and res judicata defense

■ Stuckey initially interposed the affirmative defenses of the compulsory counterclaim rule and res judicata based on the actions and judgment in cause no. 85–68,-553. However, Stuckey neither named Lesbrookton as a defendant nor alleged a cause of action against it in that cause, which Stuckey brought only against Attar individually to recover on his guaranty. As a consequence, rule 97(a) is unavailable as a basis for the defenses, *Price v. Couch*, 462 S.W.2d 556, 558 (Tex.1970); *Robertson v. Melton's Estate*, 306 S.W.2d 811, 813 (Tex.Civ.App.—Beaumont 1957, writ ref'd), unless, as Stuckey contends, Attar was acting on behalf of Lesbrookton in that cause. *See Stevenson v. Reese*, 593 S.W.2d 828, 830 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) ("[I]f the change in capacity appears to be for no other reason than to escape the consequences of having failed to file a compulsory counterclaim in the first suit, dismissal of the second suit shall be required under Tex.R.Civ.P. 97(a)").

Stuckey invites us to conclude as a matter of law that since Attar acted in a representative capacity throughout all transactions, he was acting in a representative capacity in executing the guaranty and, therefore, was sued in a representative capacity in cause no. 85–68,553. This results, Stuckey submits, because the counterclaim Attar filed in the cause contains the same claims Attar alleged in his representative capacity for Lesbrookton in the present cause; Lesbrookton paid the litigation costs in Stuckey's action and the appeal, posted the supersedeas bond and paid the balance of Attar's individual liability on the guaranty when the judgment was affirmed; and Attar's deposition testimony shows that any money he received on his counterclaim in Stuckey's action would go to Lesbrookton, that he had never been sued in an "individual capacity," and that to Attar, "acting individually" means that he is acting on behalf of the companies he represents.

Yet, we must decline the invitation. The letter agreement explicitly required Attar himself to provide the guaranty. The guaranty was signed "Dibo Attar" only, and it was made binding upon "the heirs, personal representatives and successors of Attar." Stuckey filed his action against Dibo Attar "an individual," and neither named Lesbrookton a party nor alleged a cause of action against it. Under this pleading, Stuckey could only recover from Attar individually. *Texaco, Inc. v. Wolfe*, 601 S.W.2d 737, 740–41 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

The conflicting inferences in the summary judgment proof present a fact issue. *Ridgeline v. Crow–Gottesman–Shafer No. 1*, 734 S.W.2d 114, 116–17 (Tex.App.—Austin 1987, no writ). The unresolved fact issue precludes a take-nothing summary judgment predicated on the affirmative defenses of the compulsory counterclaim rule and res judicata. Tex.R.Civ.P. 166a(c); *Webb v. Eledge*, 678 S.W.2d 259, 261 (Tex. App.—Amarillo 1984, no writ).

### b. Stuckey's statutes of limitations defense

■ As previously noted, Stuckey interposed the two- and four-year statutes of limitations to the various claims Attar advanced and Stuckey attributed to Lesbrookton. In doing so, Stuckey submits that Lesbrookton's action for fraud is governed by the two-year statute of limitations, citing Texas Civil Practice and Remedies Code Annotated, § 16.003 (Vernon 1986), *Mooney v. Harlin*, 622 S.W.2d 83, 84 (Tex. 1981), and *Blondeau v. Sommer*, 139

S.W.2d 223, 225 (Tex.Civ.App.—Galveston 1940, writ ref'd). Accordingly, he says on the authority of *Mooney* and *Blondeau*, Lesbrookton should have filed this suit and served him within two years from the time the cause of action accrued, *i.e.*, within two years from the time the fraud was perpetrated, or was discovered, or might have been discovered through reasonable diligence.

With this premise, Stuckey, pointing out that he was not named a defendant until 25 April 1986 and he had requested the court to judicially notice there was no request for service on him until 7 July 1987, and referring to Attar's testimonial beliefs and feelings, represents that "Attar had formed his belief that he and Lesbrookton had been duped, taken and misled at least by early 1983, and certainly by late September 1983." Therefore, since Lesbrookton's suit was not filed and he was not served prior to October, 1985, Stuckey proposes Lesbrookton's action is barred by the two-year statute of limitations.

Alternatively, Stuckey, "[a]ssuming, even more generously, that March 25, 1985 [when Attar, because of his suspicions, refused to make the final interest payment under his guaranty] is the latest possible date on which Attar, with the exercise of reasonable diligence, should have discovered his and Lesbrookton's causes of action," represents that Lesbrookton was "required to file [its] petition against Stuckey within two years of that time, *and to serve* the petition on Stuckey with reasonable diligence." Under this scenario, Stuckey submits that Lesbrookton's action is still barred by the two-year statute of limitations, because its failure to request the issuance of citation for almost fifteen months after its suit was filed demonstrates a lack of the diligence that *Zale Corporation v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex.1975), requires to toll the two-year statute of limitations.

Stuckey's proposals on the limitation bar are not persuasive, for it is now, albeit recently, settled that, by the 1979 amendments to the statutes of limitations, the limitation period for fraud is four years.

*Williams v. Khalaf*, 33 Tex.Sup.Ct.J. 354, 355–56 (March 28, 1990). Stuckey had the burden of negating Lesbrookton's pleading of the discovery rule by proving as a matter of law that there is no genuine issue of fact as to the time Lesbrookton discovered or should have discovered the fraud alleged. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). Thus, even accepting Stuckey's representation that Lesbrookton discovered the fraud "certainly by September 1983," then the filing of Lesbrookton's action against Stuckey on 25 April 1986 and his service of citation on 15 July 1987 was well within the four-year limitation period. As a result, Stuckey did not establish his right to summary judgment based on the defense of limitations.

### c. Stuckey's claims of negation

In support of his contention that he conclusively negated one or more of the elements of Lesbrookton's pleaded cause of action, Stuckey first recites the six elements of fraud set out in *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983), and the five elements of civil conspiracy listed in *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983), which Lesbrookton must prove to prevail. He next asserts that he negated the essential elements that (1) the alleged fraudulent representations were false when made, and (2) the object of the conspiracy was to defraud Lesbrookton. We are not in accord.

Stuckey seizes upon Attar's deposition testimony that he had no personal knowledge whether any of the alleged representations made by Stuckey were false when they were made as an admission conclusively negating a critical element of Lesbrookton's fraud action. However, a litigant's lack of personal knowledge of a fact does not conclusively negate the existence of the fact. By merely showing that Attar has no personal knowledge of a fact necessary to prove Lesbrookton's cause of action, Stuckey has not conclusively proved that the fact does not exist. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 829 (Tex.1970); *Christensen v. Sherwood Ins. Services*, 758 S.W.2d 801, 804 (Tex.

App.—Texarkana 1988, writ denied). Instead, Stuckey has only shown that if the cause went to trial on this evidence of the fact alone, the cause might be subject to an instructed verdict, which is insufficient to show as a matter of law that Stuckey is entitled to summary judgment. *Christensen v. Sherwood Ins. Services,* 758 S.W.2d at 804.

Notwithstanding, Stuckey argues that Lesbrookton has had time to develop its case, but has failed to bring forth evidence that his, Stuckey's, representations were false when made. On this premise, he suggests the Texas courts adopt the federal standard enunciated in *Celotex Corp. v. Cattret,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986), that summary judgment is appropriate when the non-movant fails to establish an essential element of his case upon which he will have the burden of proof at a trial on the merits. We must refuse the suggestion, for under the Texas summary judgment scheme, the non-movant has no burden to produce proof of an element of his cause of action until that element has been conclusively negated by movant. *Christensen v. Sherwood Ins. Services,* 758 S.W.2d at 805; *Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228, 232 (Tex.App.—Tyler 1982, writ ref'd n.r.e.).

To support his assertion that he conclusively negated the essential element of the civil conspiracy that its object was to defraud Lesbrookton, Stuckey also refers to a passage in Attar's deposition testimony. The passage reveals that Attar admitted he did not believe at any time Stuckey and two members of the Jackson Group, Jackson and Richard F. Watkins, had an objective of defrauding him. Stuckey submits this evidence is conclusive. We do not agree.

A party's testimonial declaration which is contrary to his position is a quasi-admission; and, as such, it is not conclusive, but is merely some evidence to be weighed by the fact finder. *Mendoza v. Fidelity & Guar. Ins., Etc.,* 606 S.W.2d 692, 694 (Tex. 1980). Yet, a quasi-admission will preclude recovery if it meets the requirements set out in *Griffin v. Superior Insurance Co.,*

161 Tex. 195, 338 S.W.2d 415, 419 (1960), to invoke the public policy that it would be unjust to permit a party to recover after he has sworn himself out of court by clear, unequivocal testimony. *Id.*

Our appraisal of the testimony does not lead to the conviction that Attar's quasi-admission comes within the *Griffin* rule. This results because his testimony, at the least, is not contrary to the essential element of the alleged fraudulent objective of the conspiracy. To establish that element under its allegations, Lesbrookton is required to prove that Stuckey, Jackson, and Base Financial Realty & Development, Inc. had a meeting of minds on the object or course of action, *Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp.,* 435 S.W.2d 854, 857 (Tex.1968), *i.e.,* to fraudulently induce Lesbrookton to enter into the 1983 transaction. Viewed in this light, Attar's quasi-admission is of no moment, because the fact that he said he did not believe Stuckey, Jackson, and Watkins had an objective of defrauding him is not conclusive of the question whether there was a meeting of minds on the object or course of action. At most, Attar's testimony is useable as impeachment or substantive evidence on the element. *Mendoza v. Fidelity & Guar. Ins. Etc.,* 606 S.W.2d at 694. Therefore, contrary to his assertion, Stuckey has not conclusively negated this element of Lesbrookton's cause of action and take-nothing judgment against Lesbrookton will be reversed.

### SUMMARY JUDGMENT ON STUCKEY'S BREACH OF CONTRACT CLAIM

 Stuckey was awarded summary judgment on the ground that Attar and Lesbrookton breached the release by filing and prosecuting their claims against him. To merit the judgment, Stuckey was required to establish by evidence that there is no material factual issue upon the elements of his cause of action. *Gulf, Colorado & Santa Fe Railway Co. v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 500 (1958). Unless Stuckey has done so, he is not entitled

to the summary judgment. *Nixon v. Mr. Property Management,* 690 S.W.2d at 548.

An essential element of Stuckey's cause of action is the subsistence of the release. When he moved for summary judgment, evidencing the execution and terms of the release, its breach, and his damages, he established his entitlement to summary judgment, unless Attar and Lesbrookton expressly presented reasons, and summary judgment proof to raise a fact issue thereof, to avoid his entitlement. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678.

Both Attar and Lesbrookton attacked the validity of the release by presenting fraud in the inducement of the transaction, including the release, to defeat Stuckey's right to summary judgment. In this regard, a release is subject to being set aside if it was induced by fraud. *Texas & N.O. Ry. Co. v. Thompson,* 12 S.W.2d 963, 964 (Tex.Comm'n App.1929); *Schmaltz v. Walder,* 566 S.W.2d 81, 84 (Tex.Civ.App.— Corpus Christi 1978, writ ref'd n.r.e.). And, although we have held that Attar individually is barred from interposing fraud to defeat Stuckey's res judicata defense to his, Attar's, individual counterclaims, Attar still may inject the issue of fraud as a defense to Stuckey's action for breach of the release. *Mason v. Peterson,* 250 S.W. 142, 146–47 (Tex.Comm'n App. 1923, holding approved).

But to defeat Stuckey's right to summary judgment by the expressly presented issue of fraud in the inducement, Attar and Lesbrookton were required to produce summary judgment evidence to raise a fact issue with respect to each element of the fraud alleged. *Schmaltz v. Walder,* 566 S.W.2d at 84. Those elements are: (1) a material representation was made; (2) it was false; (3) when the speaker made it, he knew it was false, or he made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) the party thereby suffered injury. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977).

Attar and Lesbrookton presented summary judgment evidence of the alleged misrepresentations by affidavits and depositions. The evidence reflected that Stuckey and Jackson misrepresented the value of the Stuckey properties; that Stuckey misrepresented he was the sole legal and beneficial owner of three promissory notes with an unpaid principle amount aggregating $705,000, when the notes were not genuine and the deeds of trust purportedly securing them were fraudulently created; that Stuckey demanded installment payments on the notes without advising he had received sums which were or should have been applied on the indebtedness; that Stuckey failed to disclose that one of the properties on which he demanded payment had been sold to Base Financial Realty & Development, Inc. before the release was executed; and that as a consequence, Attar executed the release. Furthermore, there was included a memorandum by Stuckey's tax accountant in which it was stated that the sales agreement was not fulfilled, due in part because the notes Jackson sold Stuckey [and included in the sale to Attar] were not genuine.

In the trial court, Stuckey objected to the evidence as incompetent summary judgment evidence. However, his objection to the alleged misrepresentations as parol evidence is unavailing; the parol evidence rule does not prevent proof of fraud. *Santos v. Mid–Continent Refrigerator Company,* 471 S.W.2d 568, 569 (Tex.1971).

No more availing was his objection that a copy of his attorney's letter demanding payment on the notes was not the best evidence. His attorney's identification of the copy and attestation to its accuracy made the copy admissible over the best evidence objection. *Bunting v. McConnell,* 545 S.W.2d 30, 32 (Tex.Civ.App.— Houston [1st Dist.] 1976, no writ).

Nor did it avail Stuckey to object that his accountant's memorandum is hearsay. The memorandum does not affirmatively appear to have a hearsay character so as to cause it to be disregarded on appeal. *Traylor v. Jimenez,* 600 S.W.2d 398, 399 (Tex.Civ.App.—Waco 1980, no writ).

Further, Stuckey attacked Attar's affidavit testimony on the ground that it contains legal conclusions which, of course, would be insufficient to raise an issue of fact. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Even accepting that the objection is valid as to some parts of Attar's affidavits, there still remain factual statements of misrepresentations concerning the values of properties, the absence of liability to be incurred by Attar and Lesbrookton by virtue of the Sales Agreement, the extent of injury incurred by Stuckey as a result of the breach of the Sales Agreement, as well as competent evidence of Attar's reliance upon those misrepresentations made or facts withheld. Thus, the affidavits can be accepted for the factual assertions contained therein. *Muhm v. Davis,* 580 S.W.2d 98, 102 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Stuckey also objected, and urges on appeal, that the misrepresentations of his sole ownership of the notes was made by Jackson and is not attributable to him. Yet, in his affidavit, Attar identifies both Jackson and Stuckey, while together, as misrepresenting the values of the Stuckey properties, and Jackson stated in his deposition that when he discovered the notes were not genuine he thinks he told Stuckey.

Upon the disregard of all conflicts in the evidence, and the acceptance of all reasonable inferences favorable to Lesbrookton, this evidence sufficiently raises, at least in a permissible circumstantial manner, *Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp.,* 435 S.W.2d at 858, a fact issue of each element of a civil conspiracy, *Massey v. Armco Steel Co.,* 652 S.W.2d at 934, in furtherance of which Stuckey misrepresented Attar's and Lesbrookton's liability in the transaction to their damage. Thus, Stuckey failed to show the absence of a genuine issue of a material fact so as to be entitled to summary judgment as a matter of law.

We have not overlooked Stuckey's alternative argument that assuming, *arguendo,* there was fraud in the inducement of the release, there was not fraud in its procurement. He suggests the adoption of the Georgia approach that only fraud in the procurement of the release will render it voidable. *Henslee v. Houston,* 566 F.2d 475, 479 (5th Cir.1978). Under the Georgia authority cited by Stuckey, "the only fraud which relieves a party who can read a document from the effect of that document is fraud which prevented the party from reading it." *Driscoll v. Schuttler,* 697 F.Supp. 1195, 1201–02 (N.D.Ga.1988). We do not embrace the suggestion, because we are committed to the long established Texas law that fraud will vitiate a contract if a fraudulent representation is relied upon to the extent that it was a material factor in inducing the making of the contract. *Kennedy v. Texas Employers Ins. Ass'n,* 121 S.W.2d 434, 438 (Tex.Civ.App.—Dallas 1938), *aff'd,* 135 Tex. 486, 143 S.W.2d 583 (1940).

## CONCLUSION

Accordingly, Stuckey was not entitled to either the take-nothing summary judgment rendered on Attar's and Lesbrookton's entire claims or on his own claim. To this extent, Attar's and Lesbrookton's two points of error are sustained.

The default judgment rendered in Attar's and Lesbrookton's action against the Jackson Group is severed. The summary judgment rendered in favor of Stuckey is reversed, and the causes of action underlying it are remanded to the trial court.